Stephen Montoya (#011791)
Robert E. Pastor (#021963)
**Montoya, Jimenez & Pastor, P.A.**
The Great American Tower
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012
(602) 256-6718
(602) 256-6667 fax
stephen@montoyalawgroup.com
repastor@mjpattorneys.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Arizona Students' Association, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| The Arizona Board of Regents, | (Jury Trial Demanded) |
| Defendant. | |

For its Complaint against Defendant, Plaintiff alleges the following:

1. This is an action asserted under the Civil Rights Act of 1871, 42 U.S.C. § 1871, to redress the violation of the free speech rights of the Arizona Students' Association by the Arizona Board of Regents.

2. The Arizona Students' Association ("ASA") is a nonprofit student organization incorporated under the laws of the State of Arizona.

3. ASA was established in 1974 by public university students across Arizona to advocate the affordability, accessibility, and quality of education at Arizona's three public universities, namely, Arizona State University, Northern Arizona University, and the University of Arizona.

4. ASA is governed by a twenty-six member board of directors consisting of students from all three of Arizona's public universities.

5. In accordance with its organizational purpose, ASA routinely engages in political advocacy supporting increases in student financial aid and public funding of higher education and opposing tuition increases and budget cuts to public education.

6. The Arizona Board of Regents is created and governed by Arizona law and serves as the governing board of Arizona's three public universities. <u>See generally</u>, A.R.S. §§ 15-1601-15-1650.

7. Each of the twelve Regents serving on the Board is nominated by the Governor and confirmed by the Arizona State Senate, except for two <u>ex-officio</u> Regents, namely, the Governor of Arizona and the Arizona Superintendent of Public Instruction.

8. The Board of Regents directly funded ASA for over two decades, from 1974 to 1998.

9. In 1998, the students at all three public universities in Arizona voted to directly fund ASA by means of a one-dollar, refundable, student fee collected by each public university in the State at the beginning of each semester with tuition payments.

10. The one-dollar ASA student fee was <u>not</u> mandatory, and students were given the option to "opt-out" of the fee by requesting ASA to refund the fee under ASA's published procedures.

11. The Board of Regents agreed to collect the one-dollar, refundable, student fee at the beginning of each semester on behalf of ASA in conjunction with the collection of tuition in 1998.

12. The students of all three public universities in Arizona voted to increase the one-dollar, refundable, ASA student fee to two-dollars payable each semester in 2008.

13. The two-dollar ASA student fee was <u>not</u> mandatory, and students were given the option to "opt-out" of the fee by requesting ASA to refund the fee under ASA's published procedures.

14. The Board of Regents once again agreed to collect the two-dollar, refundable, ASA student fee at the beginning of each semester with tuition payments in 2008.

15. ASA used the student fees to oppose tuition increases and budget cuts to public higher education and to support student aid and increased funding of public higher education in Arizona.

16. ASA's financial records have been regularly audited, and the reports of the audits have been made available to the Arizona Board of Regents upon request.

17. The Board of Regents has never accused ASA of improperly expending any student funds or engaging in misconduct of any kind.

18. In accordance with its organizational purpose, in 2010, ASA actively supported an Arizona ballot measure known as "Proposition 100," which established a temporary, one-cent sales tax to (among other things) finance

various educational programs throughout the state, including programs at Arizona State University, Northern Arizona University, and the University of Arizona.

19. The Governor of Arizona, Janice K. Brewer, supported Proposition 100.

20. Although the voters of Arizona approved Proposition 100 on the May 18, 2010 special election ballot, the Proposition was expressly scheduled to automatically expire in 2013.

21. In accordance with its organizational purpose, as the 2013 expiration of Proposition 100 approached, ASA publicly advocated for the continuation of the one-cent sales tax created by Proposition 100 to continue the funding of the educational programs included in the Proposition.

22. ASA and other interested groups and individuals ultimately drafted a new initiative ballot measure seeking voter approval to permanently extend the one–cent sales tax created by Proposition 100.

23. The new initiative petition which ASA helped draft became known as the "Arizona Sales Tax Renewal Amendment" and was placed on the November 6, 2012 ballot as "Proposition 204."

24. The Arizona Joint Legislative Budget Committee estimated that Proposition 204 would have provided an additional fifty million dollars of funding to Arizona's three public universities.

25. ASA collected more than twenty thousand signatures in order to qualify Proposition 204 for the ballot.

26. ASA also helped draft the ballot argument in favor of Proposition 204 that was ultimately published in the official Arizona Secretary of State Publicity Pamphlet.

27. ASA also participated in various media events and information sessions in support of Proposition 204.

28. ASA also distributed literature and engaged in social media campaigning in support of Proposition 204.

29. ASA also participated in voter telephone banking and canvassed neighborhoods in support of Proposition 204.

30. ASA's Board of Directors also unanimously voted to expend approximately $120,000 on behalf of ASA in support of Proposition 204.

31. ASA's advocacy and expenditures in support of Proposition 204 were fully disclosed and complied with all applicable laws governing such activities.

32. The Governor of Arizona, Janice K. Brewer, opposed Proposition 204.

33. Proposition 204 was defeated by the electorate at the November 6, 2012 general election.

34. Several members of the Board of Regents criticized ASA for supporting Proposition 204.

35. Although several members of the Board of Regents criticized ASA for supporting Proposition 204, no member of the Board of Regents stated or suggested that they believed that ASA acted unlawfully in supporting the Proposition.

36. The Board of Regents scheduled a regular meeting for Monday, November 26, 2012.

37. The Board of Regents' agenda for its November 26, 2012 meeting gave notice that the topic of the two-dollar, refundable, ASA student fee would be discussed, but <u>not</u> subject to any vote.

38. Notwithstanding that limitation, the Board of Regents proceeded to vote to suspend its collection of the refundable ASA student fee that the students had agreed to pay and the Board agreed to collect since 1998.

39. After learning that its vote may have violated Arizona's "Open Meeting" law because it was not duly noticed, the Board of Regents scheduled another vote on the two-dollar, refundable, ASA student fee for a special meeting on December 6-7, 2012.

40. At its December 6-7, 2012 meeting, the Board of Regents once again voted to suspend its collection of the two-dollar, refundable, ASA student fee.

41. Several members of the Board of Regents acknowledged that the Board's suspension of the two-dollar, refundable, ASA student fee was "political" in nature and resulted from ASA's advocacy in support of Proposition 204.

42. On January 23, 2013, the Board of Regents held a Special Board meeting and proposed a revision to the Board's policies regarding the collection of the ASA two-dollar student fee that allows the university to collect the ASA fee from only those students who choose to "opt-in" to paying the fee in the Fall Semester of 2013 and requiring that ASA reimburse the universities for the administrative costs of collecting the fee.

43. On February 7, 2013, the Board of Regents voted to modify its policies regarding the collection of the ASA two-dollar student fee whereby each of Arizona's three public universities would collect the ASA fee from only those students who choose to "opt-in" to paying the fee in the Fall Semester of 2013 and requiring that ASA reimburse the universities for the administrative costs of collecting the fee.

44. The Board of Regents suspended and modified its policies governing the collection of the ASA student fee in retaliation for ASA's advocacy in support of Proposition 204 and in violation of ASA's free speech rights under the First Amendment to the United States Constitution.

45. The Board of Regents' suspended and modified its policies governing its collection of the ASA student fee based upon the content of ASA's political speech in support of Proposition 204 and in violation of ASA's free speech rights under the First Amendment to the Constitution to the United States.

46. The Board of Regents' suspension and modification of its policies governing its collection of the ASA student fee is also proximately causing a chilling effect of ASA's political speech in violation of ASA's free speech rights under the First Amendment to the Constitution to the United States.

47. The Board of Regents' retaliatory and content-based suspension and modification of its policies governing its collection of the ASA student fee is causing ASA immediate, irreparable injury to ASA by depriving ASA of its only source of income.

**WHEREFORE,** based upon the foregoing, Plaintiff respectfully requests the Court to:

A. Issue a judgment declaring that the Arizona Board of Regents' suspension and modification of its policies governing its collection of the ASA student fee were retaliatory and in violation of ASA's rights under the First Amendment to the Constitution of the United States;

B. Issue a judgment declaring that the Arizona Board of Regents' suspension and modification of its policies governing its collection of ASA's student fee constitute a content-based regulation of political speech in violation of ASA's rights under the First Amendment to the Constitution of the United States;

C. Issue preliminary and permanent injunctions prohibiting the Arizona Board of Regents from suspending, modifying, terminating or otherwise undermining its collection of the ASA student fee;

D. Award ASA damages against the Arizona Board of Regents in an amount to be proven at trial;

E. Issue a judgment awarding ASA its reasonable attorney fees and costs against the Arizona Board of Regents pursuant to 42 U.S.C. §1988 and any other applicable law; and

F. Issue a judgment awarding ASA all other relief that is just and proper under the circumstances.

Respectfully submitted this 12th day of February 2013.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

s/ Stephen Montoya
Stephen Montoya
Robert E. Pastor
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012
Attorneys for Plaintiff

I hereby certify that on February 12, 2013, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.


s/ Stephen Montoya