**Scharf-Norton Center for Constitutional Litigation at the
GOLDWATER INSTITUTE**
Clint Bolick (Arizona Bar No. 021684)
Kurt M. Altman (Arizona Bar No. 015603)
500 E. Coronado Rd., Phoenix, AZ 85004
(602) 462-5000
litigation@goldwaterinstitute.org
*Attorneys for Intervenor-Defendants Five Individuals*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE ARIZONA STUDENTS' ASSOCIATION, | ) 2:13-cv-00306 |
| | ) |
| Plaintiff, | ) **MOTION TO INTERVENE AS** |
| | ) **DEFENDANTS ON BEHALF OF FIVE** |
| vs. | ) **INDIVIDUALS** |
| | ) |
| THE ARIZONA BOARD OF REGENTS, | ) |
| | ) |
| Defendant. | ) |

1. Pursuant to Rule 24, Fed. R. Civ. Pro., five individuals move to intervene as defendants to defend the actions taken by the Arizona Board of Regents ("ABOR") during their February 7, 2013, meeting, as not being a violation of the Civil Rights Act of 1871, 42 U.S.C. § 1871.  ABOR's actions do not run afoul of the First Amendment to the Constitution of the United States which protects the free speech rights of all.  Should Plaintiff's requested relief be granted, the constitutional rights of the proposed intervenors would be violated.

2. This Motion is supported by the attached Exhibit, the pleading that sets out the claim or defense for which intervention is sought (Ex. 1) as required by Rule 24(c), Fed. R. Civ. P.

1

3.  On February 7, 2013, ABOR revised its policy for collection of student funds to support Plaintiff the Arizona Student Association ("ASA").  Prior to February 7, 2013, ABOR would collect two dollars per semester from each student attending Arizona's three public universities to fund ASA.  The two dollar per semester fee was automatically collected from each enrolled student.  Those students who opposed the contribution were able to "opt out" of the fee only after it was collected, by engaging in a difficult and time sensitive reimbursement procedure.[1]  During the February 7, 2013, meeting ABOR voted to change the fee collection process to an "opt in" procedure where students would be required to actively "opt in" to paying the ASA fee if so inclined, rather than pursuing the arduous and cumbersome reimbursement procedure if not.

4. Applicant Paul Boyer is an adult student attending a public university in Arizona.  He is a graduate student at Arizona State University.  Applicant Joseph A. Grossman is an adult student attending a public university in the State of Arizona.  He is an undergraduate student of Arizona State University, Downtown Campus.  Applicant Mark Naufel is an adult student attending a public university in the State of Arizona.  He is an undergraduate student of Arizona State University, Tempe Campus.  Applicant Jared K. Gorshe is an adult student attending a public university in Arizona.  He is an undergraduate student at Northern Arizona University.  Applicant Max Ross is an adult student attending a public university in Arizona.  He is an undergraduate student at the University of Arizona in Tucson, Arizona.  Each applicant is within the class of

---

[1] ASA would annually set aside only $50.00 per year for refund purposes, which equates to approximately one to two hundredths of one percent of the entire university population.

2

individuals whose First Amendment right would be substantially affected should Plaintiffs prevail in this action. They oppose the automatic funding of ASA as the funding is used to support political ideology contrary to their own. Such forced speech is a violation of applicants' First Amendment rights granted by the Constitution of the United States.

5. If permitted to intervene, the applicants will not disrupt the existing schedule for litigation. Based on the Memorandum of Points and Authorities below, the individual applicants move to intervene in defense of Plaintiff's constitutional challenge to the February 7, 2013 actions taken by ABOR.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court is guided primarily by practical and equitable considerations when faced with determining whether intervention is appropriate. *See United States ex. rel. McGough v. Covington Techs. Co.,* 967 F.2d 1391, 1394 (9th Cir. 1992). The rule for intervention is broadly construed in favor of intervenors. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* at 397-98 (citation omitted). Under Rule 24(a) (intervention of right), courts must permit anyone to intervene who claims an interest the subject of the action when (1) the applicant's motion is timely; (2) the applicant asserts an interest in the subject of the action; (3) the applicant's interests may be practically impeded by disposition of the action; and (4) the applicant's interest is inadequately represented by the other parties. *Id.* at 397. Under Rule 24(b) (permissive intervention), courts may permit anyone to

3

intervene when (1) the applicant's motion is timely; (2) there are independent grounds for jurisdiction; and (3) the applicant has a claim or defense that shares a common question of law or fact with the action. *Id.* at 403. "[C]ourts are guided primarily by practical and equitable considerations." *Id.* at 397 (quotation omitted). The individual applicants move for mandatory intervention, or alternatively, for permissive intervention.

**A.  INTERVENTION AS OF RIGHT**

**I.  Timeliness**

The first factor for both intervention of right and permissive intervention, timeliness of the application, is unquestionably met. Plaintiffs filed their complaint on February 12, 2013. This Motion to Intervene is filed approximately five weeks from the actions' initiation. Beyond the complaint, only one pleading has been filed. On March 6, 2013, defendants ABOR filed a Motion to Dismiss the Complaint. To date, Plaintiffs have not yet filed a response. This motion is "filed at a very early stage, before any hearings or rulings on substantive matters." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). The individual applicants here have clearly acted with alacrity, exceeding the timeliness requirement for intervention. Additionally their interests satisfy the remaining factors for intervention of right as well as permissive intervention.

**II. Applicants Assert an Interest in the Subject Action**

The individuals named here also have a right to intervene because they are among those whom the First Amendment is designed to protect and therefore are among those whose interests would be compromised should the Plaintiffs prevail in their cause.

4

1. <u>Interest in the subject of the action.</u>

"Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry.  No specific legal or equitable interest need be established." *S.W. Center for Bio. Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001) (quotation omitted).  An applicant demonstrates a "significant protectable interest" in an action if (1) it asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally protected interest and the Plaintiff's claims.  *Donnelly v. Glickman*, 159 F.3d 404, 409 (9th Cir. 2006); *citing Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 837 (9th Cir. 1996).  The interests of the individual applicants far exceed this minimum threshold inquiry.  "An applicant generally satisfies the relationship requirement only if the resolution to the Plaintiff's claims actually will affect the applicant." *Donnelly,* 159 F.3d at 410.  *See Greene v. United States*, 996F.2d 973, 976-78 (9th Cir. 1993) (holding that an applicant lacked a "significant protectable interest" in an action when the resolution of the Plaintiff's claims would not affect the applicant directly).  Here, the applicants, as well as students who attend the Arizona State University system after them, will be directly affected by the disposition of this action. Should Plaintiffs prevail, the applicants' First Amendment rights will be directly affected by the implications of compelled speech and association derived from the automatic funding of ASA.  The Supreme Court has long recognized those very First Amendment implications of compelled speech.  *Board of Regents of University of Wisconsin v. Southworth,* 529 U.S. 217, 230, 120 S.Ct. 1346, 1354 (2000).

The individual intervenor applicants also have a significant interest in the measure because they are precisely those whom ABOR intended to protect by the policy change shifting the ASA fee collection to an "opt in" procedure rather than the previously used arduous "opt out" method. The intended beneficiaries of laws routinely satisfy the interest prong for intervention of right. *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (small farmers intervened in action challenging reclamation laws intended to benefit them by offering small tracts of farm land at nonspeculative prices); *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440-41 (9th Cir. 2006) (healthcare providers intervened in action challenging law that prohibited governments from penalizing doctors who refused to perform abortions because such healthcare providers were the law's intended beneficiaries); *S.W. Center for Bio. Diversity*, 268 F.3d at 818 (construction contractor and building trades associations intervened in action challenging city's land management program intended to benefit them); *Johnson v. San Francisco Unified Sch. Dist.*, 500 F.2d 349, 352-54 (9th Cir. 1974) (parents intervened in school desegregation action to compel reassigning their children to different schools); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (union intervened in action to enforce minimum wage law intended to benefit workers). ABOR's policy change, although not a legislative action will have the same impact as law on Arizona University campuses. The individual applicants, who are within the class of Arizona public university students paying tuition and currently having ASA fees automatically collected, are directly implicated and protected by ABOR's policy change. They are clearly interested in the subject of this action.

2. Potential for practical impairment of interests.

This case directly implicates the applicant's First Amendment protections. An adverse decision here would clearly subject the applicants and other members of the same class to the real prospect of their money being used to support political causes they oppose.    If Plaintiffs prevail, applicants' two dollar semester fee will be used for political causes they may not support.   The availability of a reimbursement procedure does not cure the harm of compelled speech because the procedure is at best illusory. This is precisely why healthcare providers in California were permitted to intervene in an action where the Plaintiffs sought to invalidate or narrow a law that prohibited governments from penalizing doctors who refused to perform abortions.  *California ex rel. Lockyer*, 450 F.3d at 441.   Just as in that case, the potential impairment of the applicants' interests warrants intervention of right in this action.

3. Inadequate representation by the existing party.

In a motion to intervene of right, "the requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).   "[T]he burden of making this showing is minimal."  *Id.*   Here, there is a significant possibility that the ABOR will not adequately represent the interests the individual applicants.    Under Arizona law ABOR is treated as the State of Arizona.  *Rutledge v. Ariz. Bd. Of Regents,* 660 F.2d 1345, 1349 (9th Cir. 1981).  It is "presumed that a state adequately represents its citizens when the applicant shares the same interest."  *Arakakiv v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003).   That presumption is easily overcome in this case.   The

individual applicants have, through their relationship with ASA, acquired particular knowledge of factual issues implicated by Plaintiffs' action.  Despite the fact that there is a presumption of adequate representation of constituents by a governmental party, the Supreme Court held that the Secretary of Labor did not adequately represent an individual worker interested in setting aside a union election, and the Court granted intervention as of right.  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-39 (1972) ("Even if the Secretary is performing his duties, broadly conceived, as well as can be expected, the union member may have a valid complaint about the performance of 'his lawyer'").

Additionally, the individual applicants will assert their personal rights under the First Amendment.  Although the State has standing to defend individual rights established by its laws, *see*, *e.g.*, *Virginia ex rel. Cuccinelli v. Sebelius*, 702 F. Supp. 2d 598, 605 (E.D. Va. 2010); *Florida ex rel. McCollum v. U.S. Dept. of Health & Human Services*, 716 F. Supp. 2d 1120 (N.D. Fla. 2010), it does *not* have standing to assert individual federal constitutional or statutory rights.  Those critical affirmative defenses may only be raised by the individual applicants.  *Cf. Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 235-36 (1977) (establishing First Amendment right not to have union dues used for political purposes).  Indeed, ABOR may not agree that its prior "opt out" policy was unconstitutional.  Conversely, the applicants believe the previous policy violated their individual First Amendment protections and intend to raise the First Amendment as an affirmative defense to the present action.

Even if the State adequately investigated and argued all issues necessary to protect the applicants' interests here, nothing would prevent the State from abandoning those arguments it makes to this Court in furtherance of different public interests. *See Johnson*, 500 F.2d at 354 (school district charged with the representation of all parents in the school district may not adequately represent an intervenor group of minority parents in defending its desegregation plan). However, "it is not Applicants' burden at this stage in the litigation to anticipate specific differences in trial strategy." *S.W. Center for Bio. Diversity*, 268 F.3d at 824. The "most prudent course" is for applicants to intervene "as soon as they had doubts about the Attorney General's representation." *Yniguez v. State of Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

Although aligned, the interests of the ABOR and applicants are not identical. Further, ABOR's representation in defense of their February 7, 2013, policy change could cease even within Arizona if the State neglects to appeal from an adverse decision from either this Court or the Ninth Circuit. *See Fresno County v. Andrus*, 622 F.2d 436, 439 (9th Cir 1980). In that event, the applicants would pursue the appeal to protect their interests in Arizona and other states, provided that intervention is granted here.[2]

Finally, the individual applicants will assert rights protected by the U.S. Constitution that ABOR does not possess and cannot assert. Accordingly, intervention should be granted of right.

---

[2] An applicant must be permitted intervention early in the litigation so the applicant can "fully to participate in making the record on which it may have to rely on appeal." *Sagebrush Rebellion, Inc.*, 713 F.2d at 528.

### III.   Permissive Intervention

An applicant seeking permissive intervention must meet three threshold requirements:  (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims.  *Northwest Forest Resource Council,* 82 F.3d at 839.  As an alternative to granting intervention of right, permissive intervention is justified in this matter because there are independent grounds for jurisdiction and the applicants share a common question of law or fact with this action.  The applicants raise no counterclaims, and their defense is based solely on federal law, the First Amendment of the United States Constitution, which confers federal question jurisdiction.  Clearly, the individual intervenor-applicants "share a common question or law or fact" with the current action.  Plaintiff seeks to reverse a policy change in the way the fees that fund ASA are collected by ABOR.  ASA alleges that the new "opt in" policy violates ASA's First Amendment right by chilling political speech.  The applicants' defense is to the contrary; namely that the prior "opt out" policy of fee collection was in fact a First Amendment violation and any disposition in favor of Plaintiffs would deprive applicants of their long recognized constitutional rights.  The applicants' defense shares essentially identical questions of law and fact, and they unquestionably satisfy the criteria for permissive intervention.

Finally, undersigned counsel has contacted both Plaintiffs' and Defendants' counsel for their respective positions on this Motion to Intervene prior to its filing.  Plaintiff's counsel, Mr. Stephen Montoya indicated he will reserve his position until he has the appropriate time to analyze the Motion to Intervene.  Defendant's counsel, Mr.

Joseph Kanefield indicated that there is no objection to the motion, or the relief requested on behalf of defendant ABOR.

Conclusion

Intervention in this matter is necessary and supported by case law. Intervention would not cause prejudice or delay, and participation of the applicants would assist this Court's resolution of the issues. Amicus status is insufficient because it does not allow the applicants to raise issues or arguments formally or conduct discovery and gives no right to appeal an adverse decision. *United States v. City of Los Angeles*, 288 F.3d at 400. For all these reasons, the applicants respectfully request that the Court grant their motion to intervene.

**Respectfully submitted March 22, 2013 by:**

> /S/Kurt M. Altman
> Clint Bolick (Arizona Bar No. 021684)
> Kurt M. Altman (Arizona Bar No. 015603)
> **Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
> 500 E. Coronado Rd., Phoenix, AZ 85004
> (602) 462-5000
> litigation@goldwaterinstitute.org
> *Attorneys for Intervenor-Defendants*

11

## CERTIFICATE OF SERVICE

I am an attorney and hereby certify that on March 22, 2013, I electronically filed the attached document with the Clerk of the Court for the United States District Court-District of Arizona by using the CM/ECF system.

Plaintiff Arizona Students Association and Defendant Arizona Board of Regents are registered CM/ECF users and service will be accomplished by the District Court's CM/ECF system.   I certify that I also accomplished service by email to Stephen@montoylawgroup.com       on       behalf       of       Plaintiff       ASA,       and kanefieldj@ballardspahr.com on behalf of Defendant ABOR.

/S/Kurt M. Altman