**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
Clint Bolick (Arizona Bar No. 021684)
Kurt M. Altman (Arizona Bar No. 015603)
500 E. Coronado Rd., Phoenix, AZ 85004
(602) 462-5000
litigation@goldwaterinstitute.org
*Attorneys for Intervenor-Defendants 5 Individuals*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE ARIZONA STUDENTS' ASSOCIATION, | 2:13-cv-00306-PHX-JWS |
| Plaintiff, | **REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO FIVE INDIVIDUALS' MOTION TO INTERVENE** |
| vs. | |
| THE ARIZONA BOARD OF REGENTS, | |
| Defendant. | |

Five individual applicants requesting to intervene as defendants in this action, hereby file their reply to Plaintiff's Opposition to their Motion to Intervene. Defendant, the Arizona Board of Regents (ABOR) does not oppose the intervention of the five individual applicants. Plaintiff, the Arizona Students Association (ASA) opposes the Motion to Intervene. ASA concedes in their opposition that the Motion to Intervene is timely; however they argue that the applicants (1) lack a significantly protectable interest in the current litigation (ASA's Opposition to Motion to Intervene (Opp.) 4); (2) "The disposition of the case will not impair or impede the five students ability to protect their interests" (*Id.* at 6.); and (3) that ABOR is able to adequately protect the applicant's

interests. (*Id.*) Each assertion is misplaced. This Court should grant the Motion to Intervene as the applicants meet the requirements for both intervention as of right, and permissive intervention pursuant to pursuant to Rule 24, Fed. R. Civ. P.

**Memorandum of Points and Authorities**

As the applicants illustrated in their Motion to Intervene, when faced with the appropriateness of intervention the Court is guided primarily by practical and equitable considerations. *See United States ex. rel. McGough v. Covington Techs. Co.,* 967 F.2d 1391, 1394 (9th Cir. 1992). The rule for intervention is broadly construed in favor of intervenors and any doubt should be construed in favor of granting intervention. *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* at 397-98 (citation omitted).

"Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *S.W. Center for Bio. Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001) (quotation omitted). Plaintiff argues that should they prevail in this action and ABOR is required to again institute an "opt out" fee collection policy, the individual applicants would not be subject to compelled speech because the students would "simply need to request a refund." (Opp. 5.) This argument against intervention fails on its facts and applicable authority. It is misleading to imply that the ASA fee collection process is voluntary. Prior to the change in

policy, ABOR would automatically collect the fee through each student's tuition bill. The fee was located in the section with other student fees that are collected on behalf of university-affiliated student organizations. ASA admits they are a "private, independent entity" unaffiliated with the university system. (Opp. 5.) The inclusion of the ASA fee with tuition statements disguises the fee as one required by the university. There is no indication within the tuition statement that the fee is refundable. To argue that the students "simply need to request a refund" their individual First Amendment rights to be adequately protected trivializes the protections granted individuals by the Bill of Rights. By design, students are simply unaware that ASA's fee is refundable, further evidenced by the fact that ASA sets aside a mere $50.00 a year out of approximately $565,000 collected to fund potential refund requests. Even an "opt out" system less onerous than ASA's illusory procedure cannot be relied on to save the fee collection from constitutional suspicion. In the most recent Supreme Court case to discuss "opt out" procedures of fees collected and used for political speech, Justice Alito said; "And in any event, even a full refund would not undo the violation of First Amendment rights. As we have recognized, the First Amendment does not permit a union to extract a loan from unwilling nonmembers even if the money is later paid back in full." *Knox v. Service Employees Intern. Union,* 132 S. Ct. 2277, 2292-93 (2012). The "opt out" fee collection process cannot cure its inherent constitutional defect, a violation of the First Amendment. For students who

disagree with ASA's political agenda a refund after ASA makes political use of the fees "would be of cold comfort." *Id.* at 2293.

Plaintiff further attempts to downplay the necessity of intervention in this matter by its reliance on *Board of Regents of Univ. of Wisconsin v. Southworth*, 529 U.S. 217, 120 S. Ct. 1346 (2000). *Southworth's* only application to the present case is its important recognition that compelled speech directly implicates the First Amendment rights of individuals such as the five current applicants. *Southworth,* 529 U.S. at 230, 120 S.Ct. at 1354. Beyond that important legal proposition, the Supreme Court addressed a significantly different factual situation in *Southworth*. In *Southworth* non-refundable student fees were collected by the University of Wisconsin and deposited in a fund ultimately under the control of student government which dispersed funds to registered student organization (RSO) under a specific set of policies and procedures. *Id.,* 529 U.S. at 225-227, 120 S. Ct. at 1352-1353. The facts of *Southworth* were critical to its holding. The process employed by the University of Wisconsin did not run afoul of the First Amendment because the non-refundable fees were dispersed to RSOs, under a viewpoint neutral set of protections ensured by the policies and procedures of the student government. *Id.,* 529 U.S. at 221, 120 S. Ct at 1350. The present case is simply not analogous. By plaintiff's own admission, ASA is not affiliated with the universities in Arizona. (Opp. 5.) They are a private entity that under ABOR's previous "opt out" policy was directly subsidized by student fees collected through university tuition bills. The fact that ASA is not an RSO is

enough to directly remove this case from the umbrella of *Southworth*. However unlike *Southworth*, no mechanism or procedure to ensure the fee dispersal was "viewpoint neutral" existed under ABOR's "opt out" policy. As such the ASA situation is far removed from *Southworth*, the case on which Plaintiff heavily relies to oppose the applicants Motion to Intervene.

Applicants have a protectable First Amendment interest at stake in this matter as the facts are more closely analogous to those in *Abood v Det. Bd. Of Ed.*, 431 U.S. 209, 97 S. Ct 1782 (1977), where a teachers union attempted to force nonmembers to fund political speech that they did not agree with. The Supreme Court held that the union could not force nonmembers to subsidize political activities of the union that they opposed. *Abood,* 431 U.S. at 236-37, 97 S. Ct. at 1800. Here students such as the five applicants have been forced to support the political speech of ASA by funding its existence through the automatically collected fees of ABOR's "opt out" policy. Should that policy once again go into effect because of the present suit brought by Plaintiff, the five applicants and other students similarly situated will be deprived of their First Amendment protections. As such, intervention is appropriate and even encouraged so as to avoid additional future litigation on the same circumstances and legal issues presented.

The applicants concede that defendant ABOR is represented by both able-bodied as well as able-minded lawyers from Ballard Spahr, through their lead counsel Joseph Kanefield. However the quality of lawyer contained within Ballard Spahr's stable is not the threshold question when determining whether the

intervenor applicants' interests will be adequately represented.[1] The question in this case is whether ABOR is legally able to represent the interests of the individual applicants.

ABOR does not have the legal authority to adequately represent the applicants. Under Arizona law ABOR is treated as the State of Arizona. *Rutledge v. Ariz. Bd. Of Regents,* 660 F.2d 1345, 1349 (9th Cir. 1981). The individual applicants have asserted as an affirmative defense their personal rights under the First Amendment. Although the State has standing to defend individual rights established by its laws, *see*, *e.g.*, *Virginia ex rel. Cuccinelli v. Sebelius*, 702 F. Supp. 2d 598, 605 (E.D. Va. 2010); *Florida ex rel. McCollum v. U.S. Dept. of Health & Human Services*, 716 F. Supp. 2d 1120 (N.D. Fla. 2010), it does *not* have standing to assert individual federal constitutional or statutory rights. Those critical affirmative defenses may only be raised by the individual applicants. *Cf. Abood*, 431 U.S. 209, 235-36 (1977) (establishing First Amendment right not to have union dues used for political purposes). Indeed, ABOR may not agree that its prior "opt out" policy was unconstitutional. Conversely, the applicants believe the previous policy violated their individual First Amendment protections and intend to raise the First Amendment as an affirmative defense to the present action. Should this Court deny the Motion to Intervene a real possibility exists that the applicants will be forced to bring a separate action based on the same law

---

[1] This Court should note that arguing that applicants' interests would be adequately represented by counsel for ABOR necessarily implies the applicants possess an interest in need of representation, which contradicts Plaintiff's earlier arguments in opposition to the Motion to Intervene.

and facts in order to sufficiently protect their First Amendment guarantees. ABOR cannot assert or defend the intervenor applicants' federal constitutional rights in this matter, a fact Plaintiff's Response in Opposition to the Motion to Intervene simply fails to address. It is precisely those constitutional rights which are at stake for the applicants that can only be defended through intervention.

Even if the State were able to adequately investigate and argue all issues necessary to protect the applicants' interests here, nothing would prevent the State from abandoning those arguments it makes to this Court in furtherance of different public interests. *See Johnson*, 500 F.2d at 354 (school district charged with the representation of all parents in the school district may not adequately represent an intervenor group of minority parents in defending its desegregation plan). However, "it is not Applicants' burden at this stage in the litigation to anticipate specific differences in trial strategy." *S.W. Center for Bio. Diversity*, 268 F.3d at 824. The "most prudent course" is for applicants to intervene "as soon as they had doubts about the Attorney General's representation." *Yniguez v. State of Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

Because the individual applicants have asserted rights protected by the U.S. Constitution that ABOR does not possess and cannot assert, intervention should be granted of right.

Finally, in no way would this Court's granting of the Motion to Intervene delay or extend the litigation in this matter or delay any decision on the merits. In fact, allowing the applicants to assert their First Amendment protections in the

pending case will substantially expedite the ultimate resolution of the constitutional questions raised by the collection scheme that has funded ASA for many years.  The applicants raise no counterclaims, and their defense is based solely on federal law, the First Amendment of the United States Constitution.

Conclusion

For the reasons stated herein as well as those stated in their original Motion to Intervene (Dkt. 13), the applicants respectfully request that the Court grant the motion and allow the five individuals to intervene.

**Respectfully submitted April 26, 2013 by:**

/S/Kurt M. Altman
Clint Bolick (Arizona Bar No. 021684)
Kurt M. Altman (Arizona Bar No. 015603)
**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
500 E. Coronado Rd., Phoenix, AZ 85004
(602) 462-5000
litigation@goldwaterinstitute.org
*Attorneys for Intervenor-Defendants*

8

# CERTIFICATE OF SERVICE

I am an attorney and hereby certify that on April 26, 2013, I electronically filed the attached document with the Clerk of the Court for the United States District Court-District of Arizona by using the CM/ECF system.

Plaintiff Arizona Students Association and Defendant Arizona Board of Regents are registered CM/ECF users and service will be accomplished by the District Court's CM/ECF system.  I certify that I also accomplished service by email to Stephen@montoyalawgroup.com on behalf of Plaintiff ASA, and kanefieldj@ballardspahr.com on behalf of Defendant ABOR.

/S/Kurt M. Altman