**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ARIZONA STUDENTS' ASSOCIATION, | ) ) ) |
| Plaintiff, | ) )   2:13-cv-00306 JWS |
| vs. | )   **ORDER AND OPINION** ) |
| ARIZONA BOARD OF REGENTS, | )   **[Re: Motion at Docket 9]** ) |
| Defendant. | ) ) |

## I.  MOTION PRESENTED

At docket 9, defendant Arizona Board of Regents ("ABOR") moves to dismiss the complaint filed by plaintiff Arizona Students' Association ("ASA") based on Eleventh Amendment immunity and based on Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim for which relief can be granted.  ASA responds at docket 19, and ABOR replies at docket 24.  Both parties request oral argument, but the motion has been thoroughly briefed, and oral argument would not be of further assistance to the court.

## II.  BACKGROUND

ASA is a nonprofit student organization which is independently incorporated and operates separately from ABOR, which is the governing body of Arizona's three public universities ("Universities").  ASA was established in 1974 to advocate for the affordability, accessibility, and quality of education at the Universities.  ASA was originally funded directly by ABOR, but in 1998 students voted to fund ASA by means of a one-dollar fee per semester.  ABOR agreed to collect the one-dollar fee on behalf of ASA in conjunction with the collection of tuition at the beginning of each semester and

did not require ASA to reimburse the Universities for the administrative costs associated with collecting the fee. Students were allowed to opt out of the fee by requesting a refund pursuant to ASA's published procedures.

In 2008, the amount of the ASA fee increased to two dollars each semester. Students again had the option to opt out of the ASA fee by requesting a refund under ASA's published procedures. Again, ABOR agreed to collect the two-dollar fee with tuition at the beginning of each semester and did not charge ASA administrative fees for doing so.

In accordance with its organizational purpose, ASA actively supported an Arizona ballot measure known as "Proposition 100," which established a temporary, one-cent sales tax to, among other things, finance various educational programs at the Universities. The sales tax was set to expire in 2013, and ASA publicly advocated for the permanent extension of the sales tax. It helped draft the "Arizona Sales Tax Renewal Amendment," or "Proposition 204." It facilitated getting the requisite signatures to have it placed on the November 6, 2012 ballot and spent money campaigning in support of Proposition 204. The proposition was defeated.

After the election, ABOR proposed and passed a revision to its policy regarding the collection of the ASA fee. Pursuant to the new policy, the ASA fee will be collected through an opt-in system, whereby the ASA fee will only be collected with tuition from students who agree to pay the fee in advance, and ASA will be required to reimburse the Universities for the administrative costs of collecting the fee. The change is set to begin for the Fall Semester of 2013.

ASA filed the complaint against ABOR pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983.[1] ASA alleges that several of ABOR's board members criticized ASA's

---

[1] ASA's complaint states that it is bringing its complaint pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1871, but the court assumes that this citation is in error and ASA meant to cite § 1983 given the allegations against ABOR, as well as the request for attorneys' fees under 42 U.S.C. § 1988.

actions in relation to Proposition 204 and that several members said the decision to revise its fee-collection policy was political in nature. Therefore, the complaint alleges, ABOR's revision of its policy governing the collection of ASA's student fees was based upon the content of ASA's political speech in violation of its First Amendment free speech rights. The complaint also alleges that ABOR's revision was made in retaliation for ASA's exercise of its free speech rights.

## III.  STANDARD OF REVIEW

ABOR brings this motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[2] To be assumed true, the allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and enable the opposing party to defend itself effectively."[3] "Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[4] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[5]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

---

[2] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[3] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[4] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[5] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

is liable for the misconduct alleged."[7]  "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8]  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[9]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[10]

## IV.  DISCUSSION

**A. Sovereign immunity**

ABOR's motion to dismiss is premised in part on an Eleventh Amendment sovereign immunity defense.  It is not clear whether an Eleventh Amendment challenge should be brought and analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Ninth Circuit has called Eleventh Amendment immunity "quasi-jurisdictional," but has not clarified whether or when Eleventh Amendment immunity issues should be analyzed under Rule 12(b)(1) or Rule 12(b)(6).[11]

The court need not resolve which rule to apply here, because the standards under either rule are essentially the same in the circumstances here, where ABOR asserts immunity based only on the allegations of the complaint.  Which means, if considered under Rule 12(b)(1), ABOR is only facially attacking the court's subject

---

[7]*Id.*

[8]*Id.* (citing *Twombly*, 550 U.S. at 556).

[9]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[10]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr v. Baca*, 652 F.3d at 1216.

[11]*Bliemeister v. Bliemeister (In re Bliemeister)*, 296 F.3d 858, 861 (9th Cir. 2002).

-4-

matter jurisdiction. Regardless of which rule is applied, the court limits itself to examination of the allegations in the complaint and interprets those facts in the light most favorable to ASA.[12]

ABOR contends that as the governing body for the Universities it is an arm of the state and, thus, entitled to Eleventh Amendment immunity from ASA's §1983 lawsuit. The Eleventh Amendment guarantees that private individuals may not sue nonconsenting states in federal court.[13] The protection extends to state agencies and state instrumentalities, but does not extend to counties and municipalities, even though such entities exercise some state powers.[14]

It is settled law that state boards of regents generally are arms of the state and may properly assert Eleventh Amendment immunity in federal court. In *Rutledge v. Arizona Board of Regents*, the Ninth Circuit held that because ABOR is treated as the State of Arizona under Arizona law and because its funds are state funds, it is considered an arm of the state and protected by Eleventh Amendment immunity. Although *Rutledge* was overruled, the overruling was premised on other grounds, and, contrary to ASA's position, the court is bound by the portion of *Rutledge* that have not been reversed.[15] To the extent ASA argues that ABOR has waived sovereign immunity, because the Arizona Legislature has given ABOR the power to sue and be sued, that argument is unavailing. A state does not "consent to suit in federal court merely by

---

[12]*Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (noting that when the defendant brings a facial attack on the subject matter jurisdiction of the court, the court assumes the factual allegations in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor).

[13]*Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005).

[14]*Id.*

[15]*United States v. Arizona*, 641 F.3d 339, 357-58, *rev'd in part on other grounds*, 132 S.Ct. 2492 (2012); *see also Ansel Adams Publ'g Rights Trust v. PRS Media Partners, LLC*, 2011 WL 1585069, at *2-3 (N.D. Cal. April 27, 2011) ("The Ninth Circuit has determined as a matter of law that Eleventh Amendment immunity extends to [ABOR].").

stating its intention to 'sue and be sued.'"[16]  It is also settled law that a state board of regents is not a "person" within the meaning of §1983, and, thus, ASA has no § 1983 claim against ABOR in federal or state court.[17]

ASA requests that if ABOR is protected from suit by the Eleventh Amendment it be allowed to amend its complaint to include the individual regents as defendants. ABOR opposes and argues that any amendment would be futile because ASA's complaint does not state a claim that entitles it to relief.  Indeed, a motion for leave to amend may be denied if it appears to be futile or legally insufficient.[18]

**B. Failure to state a claim**

ABOR asserts that ASA's claim must fail because a public entity that facilitates the collection of funds can change or cease that facilitation without implicating the First Amendment, even if those funds were used in part for political purposes.

In *Davenport v. Washington Education Association*,[19] the Supreme Court rejected a First Amendment challenge to a state statute that limited the manner in which public-sector employee unions spend nonpublic money.  In that case, state law allowed public sector employee unions to charge nonmembers fees and allowed the public employer to collect the fees through payroll deductions.  The challenged statute limited the expenditure of these fees by requiring specific consent from nonunion members before fees charged to them could be used for election-related activities, but it did not require consent with respect to fees used for other purposes.[20]  The Supreme Court recognized that by enacting the challenged statute, the state was merely declining to facilitate the

---

[16] *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999).

[17] *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1442-43 (9th Cir. 1989).

[18] *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

[19] 551 U.S. 177 (2007).

[20] *Id.* at 181-82.

union's political speech through its payroll system; it was not restricting speech.[21] The court rejected the unions' argument that the restriction on union payroll deductions violated the First Amendment because it turned on the content of the speech at issue.[22] While the restriction was content based—it applied to fees used for political purposes—the court noted that the government can make content-based distinctions when subsidizing speech as long as those distinctions are reasonable and viewpoint neutral.[23] Thus, the court held that the statute did not violate the First Amendment.

In *Ysura v. Pocatello Education Association*,[24] the Supreme Court reaffirmed that when a state allows payroll deductions of public-employee union dues, it merely acts as a facilitator of speech. In that case, state law had allowed public sector employees to authorize a payroll deduction for general union fees and union fees used for political activities, but the state legislature passed legislation that prohibited payroll deductions for the political fees. Labor organizations filed suit, alleging that the statute's alteration of the scope of permissible payroll deductions was an unconstitutional violation of the First Amendment. The Court reiterated that while the First Amendment prohibits government from abridging the freedom of speech, "it does not confer an affirmative right to use governmental payroll mechanisms for the purpose of obtaining funds for expression."[25] It held that the ban on payroll deductions only for political fees was reasonable and applied evenhandedly and, thus, not in contravention of the First Amendment.[26]

---

[21] *Id.* at 184.

[22] *Id.* at 188-90.

[23] *Id.* at 189.

[24] 555 U.S. 353 (2009).

[25] *Id.* at 355.

[26] *Id.* at 360, 360 n.3.

1  *Davenport* and *Ysura* are instructive here. The public tuition collection process is
2  sufficiently analogous to the public payroll deduction process. Like the public employers
3  in *Davenport* and *Ysura*, ABOR facilitates ASA's speech by using the Universities'
4  established tuition collection process to collect the ASA fee. ASA, like the unions, uses
5  the money collected for various purposes related to its mission, including political ones.
6  Pursuant to *Davenport* and *Ysura*, in such an arrangement, ABOR is merely a facilitator
7  of the political speech and has no obligation to continue to subsidize speech. Moreover,
8  ABOR's policy revision does not raise issues of reasonableness and viewpoint neutrality
9  as did the statutes in *Davenport* and *Ysura* because the policy revision is not making a
10 content-based distinction; it applies generally to the ASA fee and is not limited to just
11 the portion that will be used for political purposes. Indeed, there is no allegation that the
12 revision somehow discriminates on the basis of viewpoint. Thus, ABOR did not violate
13 ASA's First Amendment rights by changing from an opt-out method of collection to an
14 opt-in method.

15 ASA argues that ABOR's illicit retaliatory motive makes the policy revision
16 unconstitutional, but inquiry into the subjective motivation behind the otherwise neutral
17 legislation or policy is inappropriate here. In *United States v. O'Brien*, the court declined
18 to invalidate a statute when "Congress had the undoubted power to enact [it]" without
19 the suspect motive.[27] It stated that the Court "will not strike down an otherwise
20 constitutional statute on the basis of an alleged illicit legislative motive."[28]

21 ASA argues that *O'Brien* does not prohibit the court from considering ABOR's
22 subjective motives, citing *Hunter v. Underwood*.[29] *Hunter*, however, involved an
23 allegation that the statute at issue was designed to disenfranchise non-white voters in

---

[27]391 U.S. 367, 384 (1968).

[28]*Id.* at 383.

[29]471 U.S. 222 (1985).

violation of the Equal Protection Clause of the Fourteenth Amendment. Claims for racial discrimination under the Equal Protection Clause require proof of discriminatory intent or motive, and, thus, the legislative intent is essential to cases involving discrimination.[30] There are other exceptions to the principle that the court should not inquire into the motives behind an otherwise proper governmental action. These include establishment of religion cases and cases challenging statutes that on their face violate First Amendment rights.[31] Here, however, ASA's case against ABOR does not fall within these categories. The allegedly illicit motivation of some members of ABOR is not relevant to the First Amendment analysis in the circumstances here.

ASA argues that essentially it is bringing a First Amendment retaliation claim and, thus, motive is relevant. It states that even though ABOR was not constitutionally required to facilitate the collection of ASA's student fee, it cannot terminate or limit its collection of the fee in retaliation for the content of ASA's political speech. However, the cases ASA cites address the termination of employment in retaliation for protected speech. In *Perry v. Sindermann*,[32] the plaintiff's First Amendment claim was based on the non-renewal of his employment at a public university in response to his criticisms of the administration. In *Pickering v. Board of Education*,[33] the plaintiff's First Amendment claim was based on his termination as a public school teacher in response to his speech that was critical of the school district. In those cases, the Supreme Court found that the government's action inhibited speech because the government was using the denial of a "valuable government benefit," public employment, to silence speech with

---

[30] *See South Carolina Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259, 1259 n.6 (4th Cir. 1989) (noting that the principle that inquiry into legislative motive should be avoided does not apply in cases where inquiry into legislative purpose is necessary to the very nature of the constitutional question at issue).

[31] *Id.*

[32] 408 U.S. 593 (1972).

[33] 391 U.S. 563 (1968).

which it disagreed.[34]  Examples of valuable government benefits include, in addition to public employment, tax exemptions, unemployment benefits, and welfare payments.[35] ABOR's prior policy of collecting the ASA fee through an opt-out method is not an equivalent benefit.  It is not a benefit available to the general public based on objective criteria.  Instead, ABOR's collection of the fee is a benefit only afforded to ASA. Moreover, ABOR was not obligated or required to collect the fee for ASA based on any law or contract; its simply voluntarily agreed to do so.  The alteration from an opt-out method to an opt-in method is not the type of benefit deprivation that could support a First Amendment retaliation case.  ASA's First Amendment claim based on ABOR's decision to alter its ASA fee collection policy is legally insufficient, and amendment would be futile.

## V.  CONCLUSION

Based on the preceding discussion, ABOR's motion to dismiss at docket 9 is **GRANTED.**  ASA's complaint is dismissed in its entirety with prejudice.

The Clerk will please enter judgment accordingly.

DATED this 31st day of July 2013.

/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[34]*Perry*, 408 U.S. at 597.

[35]*Id.*